```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
SHARON PARIS and CRAIG PARIS,      :
                                   :    Civ. No.12-7355 (NLH/JS)
          Plaintiffs,              :
                                   :
     v.                            :
                                   :    **OPINION**
PENNSAUKEN SCHOOL DISTRICT,        :
PENNSAUKEN SCHOOL BOARD OF         :
EDUCATION, TAMEKA MATTHEWS,        :
MARIANNE ANTCZAK, and JANETTE      :
BRUNSON,                           :
                                   :
          Defendants.              :
_____:

**APPEARANCES:**
SHARON AND CRAIG PARIS
4442 BURWOOD AVENUE
PENNSAUKEN, NJ 08109
     *Pro Se Plaintiffs,*

RICHARD L. GOLDSTEIN, ESQ.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, P.A.
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002
     *Attorney for Defendants Pennsauken School District, Pennsauken School Board of Education, Tameka Matthews, Marianne Antczak, and Janette Brunson.*

**HILLMAN, District Judge:**

      Presently before the Court are Defendants Pennsauken School District and Pennsauken Board of Education's (hereinafter "the Pennsauken School Defendants") Motion to Vacate Clerk's Entry of Default and Plaintiffs' Motion for Default Judgment as to all Defendants.  For the reasons that follow, the Motion to Vacate Clerk's

Entry of Default will be granted,[1] and Plaintiffs' Motion for Default Judgment as to all Defendants will be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Sharon Paris and Craig Paris, a married couple, reside in Pennsauken, New Jersey and are both teachers employed by the Pennsauken School District. Individual Defendants Tameka Matthews, Marianne Antczak, and Janette Brunson (hereinafter "the Individual Defendants") are also teachers in the Pennsauken School District.

Sharon Paris was formerly a teacher at the Baldwin School, where she was the only African-American teacher on staff. (Compl. at 2.) In the Complaint, Sharon alleges that she was the victim of repeated harassment and discriminatory behavior while employed at the Baldwin School. More specifically, Sharon avers that the harassment and discrimination arose as a result of her witnessing another teacher, Defendant Brunson, abuse children in her class. (Id. at 4.) After witnessing the alleged conduct, Sharon participated in an investigation, in which she spoke unfavorably of Brunson and apparently reported her abusive conduct. (Id. at 3, 4.) Sharon avers that due to her participation in the investigation, Brunson and other members of the Baldwin School staff began to retaliate against her by ignoring her formal complaints, disrupting her classroom protocol and physical layout, calling her derogatory names, sending harassing letters to her and her husband, and engaging in overall disrespectful

---

[1] In their Motion, Defendants also request an unspecified amount of additional time to respond to Plaintiffs' Complaint. In light of the Court's rulings, Defendants will have twenty-one days from the date of the entry of this Memorandum Opinion and accompanying Order to file their responsive papers.

and intimidating behavior.  (Id. at 3-5.)  Sharon alleges that, as a result of this conduct in her workplace, her physical and mental health began to deteriorate and she developed severe anxiety.  (Id. at 5.)  Sharon thereafter resigned from her position at the Baldwin School in the summer of 2012.  (Id.)

On November 30, 2012, Sharon and Craig filed a Complaint against the Pennsauken School Defendants and the Individual Defendants, alleging the following five counts: (1) violation of Title VII of the Civil Rights Act of 1964 based on racial discrimination; (2) common law negligence; (3) civil conspiracy; (4) defamation of character; and (5) harassment.  [Docket No. 1.]  Summonses were issued as to all Defendants on this date.  [Docket No. 2]  The Pennsauken School Defendants were served on December 18, 2012, Defendant Brunson was served on December 27, 2012, and Defendant Tameka Matthews was served on January 2, 2013.[2]  [Docket No. 5-4; Docket No. 12-3.]  The Pennsauken School Defendants failed to answer or otherwise respond to Plaintiffs' Complaint within the requisite twenty-one days, see Fed. R. Civ. P. 12(a)(1), and Plaintiffs therefore requested default to be entered in their favor as to these Defendants on January 17, 2013.  [Docket No. 4.]  The Clerk of Court entered default against the Pennsauken School Defendants for failure to plead or otherwise defend on January 22, 2013.  [Docket No. 4.]  Shortly thereafter, the Pennsauken School Defendants filed a Motion to Vacate the Clerk's Entry of Default, alleging that they had justifiable reasons for missing the response deadline.  [Docket No. 5.]  On February 6, 2013,

---

[2]     Defendant Antczak has apparently still not been served.

Plaintiffs filed a Response in Opposition to the Pennsauken School Defendants' Motion to Vacate Default, and likewise requested the Clerk to enter a default against the Individual Defendants. [Docket Nos. 6 & 7.] Thereafter, all of the Defendants jointly submitted a letter brief to the Court in which they opposed entry of default as to the Individual Defendants and again expressed why they believed the Court should vacate the Clerk's entry of default against the Pennsauken School Defendants. [Docket Nos. 8 & 9.] On February 15, 2013, Plaintiffs filed a Sur-Reply to Defendants' opposition papers.[3] [Docket No. 10.] At this point in time, the Clerk of Court has not entered default against the Individual Defendants. While Defendants' Motion to Vacate Clerk's Entry of Default was pending, Plaintiffs also filed a Motion for Default Judgment against all Defendants on July 18, 2013. All Defendants filed a Response in Opposition to the Motion for Default Judgment on July 24, 2013 [Docket No. 13], and Plaintiffs submitted a Reply[4] on August 1, 2013.[5] [Docket No. 14.]

---

[3]   Sur-reply briefs are not permitted under the District of New Jersey's Local Civil Rules. See L. Civ. R. 7(d)(6). In order to file a sur-reply, leave of court must be obtained. In the absence of obtaining the court's permission, the court need not consider the party's supplemental submission and may strike it from the record. See Slimm v. Bank of Am., No.Civ.A.12-5846, 2013 WL 1867035, at *2 n.10 (D.N.J. May 2, 2013). Here, however, the Plaintiffs are pro se litigants who may be unfamiliar with the law and motions practice before this Court. In general, pro se submissions should be afforded a more liberal reading and interpretation. See id., see also Hibbert v. Bellmawr Park Mut. Housing Corp., --F.Supp.2d--, 2013 WL 1314395, at *4 (D.N.J. Mar. 28, 2013)(internal citations omitted). Accordingly, despite the lack of the Court's leave, the Court will consider their submission.

[4]   Although Plaintiffs entitled their submission "Motion to Deny Opposition to the Motion for Default Judgment," the Court construes this as a reply to Defendants' Response in Opposition.

4

---

[5] In a letter to the Court dated July 9, 2013, Plaintiffs posed several questions to the Court:

> The case has been in default and we have filed for default judgment. What is holding up the signing of the judgments? We filed our documents properly and paid our fees and we expect Justice to be served. . . . Is the lack of communication due to the fact that we are Pro Se litigants, or [because] this is a discrimination case or we are African American?

[Docket No. 11.]  In their Reply submission filed on August 1, 2013, Plaintiffs continued to question the Court's motives, accusing the Court of disrespectful and discriminatory behavior as a result of their race and pro se status and conspiring with the Clerk's Office and Defendants' attorneys to hamper their efforts in this legal matter.  Plaintiffs' ten-page submission states in part:

> This utter lack of respect from you, the Defendants' Attorney, who our tax dollars are paying, and the court is without merit and yet complete. . . . Let's talk reality. Defendants are represented by a law firm with deep connections to the court.  This law firm is being paid by our tax dollars and yet they have no regard for the hands that pay their salaries.  So the clerk's office makes sure the law firm is notified of everything that goes on in the court and makes sure the Plaintiffs are never notified of anything that goes on in the court.  We wrote a letter to the judge recently about the lack of communication and we received notice that we filed a motion for default judgment. That is the only document the Plaintiffs have ever received from the court. . . . Civil liberty is not what Plaintiffs have experienced in this case or this court. Instead it is complete disregard and disrespect. It is a combination of being Pro Se litigants and being African American. That almost demands the absence of civil liberty. . . . It has been years of abuse and now months of disregard and disrespect from the Defendants' Attorneys and the court. . . . It is time for the court to end it if there is any semblance of civil liberty that it feels it owes the Plaintiffs.

[Docket No. 14.]

The motions in this matter have been handled in the due course of a crowded docket.  The other contentions in Plaintiffs' letters are without merit and undeserving of any further response.

**II.   STANDARD OF REVIEW**

Default judgment is governed by Federal Rule of Civil Procedure 55, which states, in relevant part, as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).  After an entry of default is entered pursuant to Rule 55(a), the plaintiff may seek the court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2).  Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 521 (3d Cir. 2006)(citing 10A Wright, Miller & Kane, *Fed. Prac. & Proc.* § 2682 at 13 (3d ed. 1998)).  After default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)(citing 10 Wright, Miller & Kane, *Fed. Prac. & Proc.* § 2688 at 444 (2d ed. 1983)).

Rule 55 of the Federal Civil Rules likewise provides the mechanism for setting aside the entry of default.  More specifically, Rule 55(c) provides as follows: "The court may set aside an entry of default for good cause[.]"  Fed. R. Civ. P. 55(c).  In determining whether good cause exists to set aside an entry of default, the court should consider four factors:

> (1)Whether the defendant has a meritorious defense; (2) whether the plaintiff would be prejudiced by vacating the default; (3) whether the default resulted from the defendant's culpable conduct; and (4) whether alternative sanctions would be effective.

CGB Occupational Therapy, Inc. v. RHA/Pa. Nursing Homes, Inc., No.Civ.A.00-4918, 2001 WL 253745, at *4 (E.D. Pa. Mar. 9, 2001)

(citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Feliciano v. Reliant Tooling Co. Ltd., 691 F.2d 653, 656 (3d Cir. 1982))(internal parentheticals omitted).  Although district courts are urged to make explicit findings concerning all of these factors when considering a motion to vacate entry of default, the second factor is often considered to be the most important inquiry.  Nat'l Specialty Ins. Co. v. Papa, No.Civ.A.11-2798, 2012 WL 868944, at *2 (D.N.J. Mar. 14, 2012)(Bumb, J.)(citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)).  Moreover, as is the case with respect to a court's entry of default judgment, a clerk's entry of "'[d]efault is not favored and all doubt should be resolved in favor of setting aside default and reaching a decision on the merits.'"  CGB, 2001 WL 253745 at *4 (quoting Cents Stores v. Dynamic Distrib., No.Civ.A.97–3869, 1998 WL 24338 (E.D. Pa. Jan. 22, 1998)); see also Papa, 2012 WL 868944 at *2; $55,518.05 in U.S. Currency, 728 F.2d at 194-95.

**III.  DISCUSSION**

On January 23, 2013, the Pennsauken School Defendants filed their Motion to Vacate Clerk's Entry of Default.  Subsumed within their Response in Opposition to the Pennsauken School Defendants' Motion, Plaintiffs alleged that Defendants' tardy and negligent conduct was worthy of sanctions pursuant to Rule 11 of the Federal Civil Rules.  Given that Plaintiffs are pro se litigants, the Court construes this as a formal motion requesting Rule 11 sanctions to be entered against the Pennsauken School Defendants.  Furthermore, while the Motion to Vacate Clerk's Entry of Default was pending, Plaintiffs filed a Motion

for Default Judgment to be entered against all Defendants on July 18, 2013. The Court considers each of these motions and requests individually below.

### A. Motion to Set Aside Entry of Default[6]

"Adjudication of a motion to set aside default is left to the discretion of the district court." Toy v. Hayman, No.Civ.A.07-3076, 2008 WL 5046723, at *3 (D.N.J. Nov. 20, 2008)(citing Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002)). As indicated above, in reviewing such a motion, the Court must consider four factors prior to vacating an entry of default.

The first factor requires the Court to consider whether lifting the default would prejudice Plaintiffs. "Prejudice under this prong only accrues due to a loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." Toy, 2008 WL 5046723 at *3 (citing Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656-57 (3d Cir. 1982))(internal quotation marks omitted). Plaintiffs here do not allege that vacating default would result in the loss of evidence, further a fraud,[7] or that they have

---

[6]   The Clerk of Court only entered default against the Pennsauken School Defendants.

[7]   Throughout their submissions, Plaintiffs generally aver that lifting default would permit Defendants to continue their pattern of untruthful and deceptive conduct and that Defendants, represented by a multi-attorney law firm, will then be able to take advantage of their pro se status. (See Pls.' Resp. Opp'n I, ¶¶ 7-12, 30, 37-38; II ¶¶ 14-32, 51, 55-57, 62, 66.) Plaintiffs have not, however, brought a cause of action for fraud against Defendants, and their general allegations of untruthful conduct do not rise to the level of an "increased potential for fraud or collusion." Moreover, as to Plaintiffs' allegations that lifting default would prejudice them by giving Defendants' attorneys the opportunity to take advantage of

8

otherwise substantially relied on the judgment.  Indeed, Plaintiffs have not clearly articulated to the Court exactly how they would be prejudiced by lifting the entry of default.  However, construing their submissions liberally — as the Court is required to do with respect to pro se litigants, see Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011)(internal citations omitted) — it appears as though Plaintiffs' argument is premised on the notion that, since they timely filed their request for default and followed the applicable rules, they should not be penalized for Defendants' failure to do the same. (See Pls.' Resp. Opp'n I, ¶¶ 7-12, 17-19, 35, 38.)  Although the Court understands Plaintiffs' frustration and commends them for abiding by the Rules of Civil Procedure despite their lack of a formal legal education, it likewise recognizes that "'delay in realizing satisfaction or the fact that the plaintiff will have to prove its case on the merits are rarely sufficient to prevent a court from opening up a default.'"  Toy, 2008 WL 5046723 at *3 (quoting Itche Corp. v. G.E.S. Bakery, Inc., No.Civ.A.08-3103, 2008 WL 4416457, at *2 (D.N.J. Sept. 24, 2008)(citing Feliciano, 691 F.2d at 656-57).  As such, "[b]ecause Plaintiff[s] ha[ve] not argued that setting aside default would affect [their] ability to try this case on the merits," the first factor weighs in favor of vacating default.  Toy, 2008 WL 5046723 at *3.

The Court next considers whether Defendants have raised a meritorious defense.  "A meritorious defense is one that, if

---

them, the Court notes that it is entirely Plaintiffs' decision to litigate this matter without an attorney and that there is no evidence in the record to substantiate these otherwise bald assertions.

established at trial, would constitute a complete defense to the action." Id. at *4 (citing $55,518.05 in U.S. Currency, 728 F.2d at 195). In order to satisfy this second factor, "[t]he defaulting party must [] set forth specific facts demonstrating the facial validity of the defense." Toy, 2008 WL 5046723 at *4. Despite the fact that this factor has been considered by courts within this District to be the most important and sometimes dispositive, see Papa, 2012 WL 868944 at *3 (internal citations omitted), Defendants have not indicated to the Court that they would be entitled to any meritorious defenses, let alone offered specific facts in support of any such defenses. Thus, the second factor counsels against setting aside default.

Rather, the crux of Defendants' Motion to set aside default is largely predicated upon the third factor, *i.e.*, that default was not due to Defendants' culpable conduct. More specifically, Defendants allege that they were served with the summons and Complaint on December 18, 2012 shortly before the Baldwin School closed for winter vacation, and that the school did not reopen until January 2, 2013. (See Defs.' Mot. Vacate Clerk's Entry Default, Ex. 2, Cert. of Richard L. Goldstein, Esq. ("Goldstein Cert.") ¶ 3.) Moreover, even though the school reopened after the New Year, the individual charged with contacting the Pennsauken School District's counsel and insurers was apparently absent due to a bout of influenza. (Id.) According to Defendants, upon this individual's return to work, Defendants' insurers were promptly notified of the lawsuit, but Defendants had to wait until their insurer determined that it would afford a defense before it retained the law firm of Marshall, Dennehey, Warner, Coleman

10

& Goggin on January 18, 2013. Once the firm received the assignment, counsel allegedly attempted to contact Plaintiffs by telephone, but was unable to leave a voicemail message since Plaintiffs' inbox was full to capacity. (Id. ¶ 4.)

Here, Plaintiffs repeatedly allege that Defendants' failure to timely respond to their Complaint amounted to seriously "negligent" conduct. (See Pls.' Resp. Opp'n I, ¶¶ 44-45, 55.) Negligence, however, is insufficient to satisfy this factor. See Itche, 2008 WL 4416457 at *2 (citing Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984)); Choice Hotels Int'l, Inc. v. Pennave Assoc., Inc., 192 F.R.D. 171, 174 (E.D. Pa. 2000). Rather, in the context of a Rule 55(c) motion, the definition of "culpable conduct" dictates that the non-responding defendant "willfully" engaged in conduct that demonstrates "flagrant bad faith." See Papa, 2012 WL 868944 at *4 (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)); Toy, 2008 WL 5046723 at *4 (citing Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984)). While the Court is concerned that a public entity would not have in place a mechanism to respond to legal process in a timely manner even during a school recess, other courts within this District have previously recognized that a delay due to a defendant's efforts to retain counsel do not amount to culpable conduct. See Itche, 2008 WL 4416457 at *2 ("[T]he Court finds that G.E.S. was not culpable in failing to respond in a timely manner. . . . Instead, it appears that G.E.S. was delayed by its efforts to retain local counsel[.]"). Defendants further indicate that, upon their retention of counsel, their attorneys made a good faith effort to

11

promptly contact Plaintiffs by telephone but were unable to do so because Plaintiffs' voicemail message box was full. Thus, the Court finds that Defendants' actions were not flagrant or committed in bad faith. As such, the third factor likewise weighs against maintaining default.

Finally, the fourth factor requires the Court to consider whether alternative sanctions would be effective under the circumstances. There is nothing in the record to suggest that any such alternative sanctions are available in this scenario. Entry of default and default judgments are actions that have conclusory effects. Such actions "should be a sanction of last, not first, resort, and courts should try to find some alternative." <u>CGB Occupational Therapy, Inc. v. RHA/Pa. Nursing Homes, Inc.</u>, No.Civ.A.00-4918, 2001 WL 253745, at *6 (E.D. Pa. Mar. 9, 2001)(internal citation omitted). Accordingly, this final factor weighs strongly against maintaining entry of default.

In summary, the first, third, and fourth factors all weigh in favor of vacating the Clerk's entry of default. Only Defendants' failure to offer a meritorious defense on their behalf counsels against vacating the default. Although this second factor is important in Rule 55(c) motions, the Court notes that other courts within this Circuit have previously held that a failure to satisfy this factor is not fatal to a defendant's motion to vacate default. <u>See</u> <u>Toy</u>, 2008 WL 5046723 at *3; <u>Mike Rosen & Assocs. P.C. v. Omega Builders, Ltd.</u>, 940 F.Supp.115, 121 (E.D. Pa. 1996)("[C]ourts in this [C]ircuit seem unwilling to deny the motion to set aside entry of

12

default solely on the basis that no meritorious defense exists[.]"). Therefore, given the strong presumption in this Circuit against judgment by default and the strong presumption in favor of trial on the merits, vacating default under the circumstances presented in this case is appropriate. Accordingly, the Pennsauken School Defendants' Motion to Vacate the Clerk's Entry of Default against them will be granted.

     B.    **Motion for Default Judgment**

On February 6, 2013, Plaintiffs requested the Clerk of Court to enter a default pursuant to Rule 55(a) against Individual Defendants Tameka Matthews and Janette Brunson.[8] [Docket No. 7.] Perhaps because Plaintiffs' request was not entirely clear,[9] the Clerk did not enter default against these parties. Moreover, while the Pennsauken School Defendants' Motion to Vacate was pending before the Court, Plaintiffs filed a Motion for Default Judgment requesting the Court to enter a default judgment against all Defendants. [Docket No. 12.]

Given that the Court has already determined that good cause exists to grant the Pennsauken School Defendants' Motion to Vacate Clerk's Entry of Default, the Court will deny Plaintiffs' request for a default judgment to be entered against these Defendants. As to the Individual Defendants, the Court notes that the Clerk of Court has not entered default against these individuals pursuant to Rule 55(a). It

---

[8] Plaintiffs did not request default to be entered against Defendant Antczak.

[9] Although Plaintiffs entitled their document as a "Request for Default Judgment" on the first page of their submission, the remainder of the document refers to the request as a "Request for Entry of Default" to be entered by the Clerk of Court pursuant to Rule 55(a).

is well established that, in order to receive a judgment of default pursuant to Rule 55(b)(1) or 55(b)(2), a party must first obtain entry of a default from the Clerk of Court.  See Stack Stackhouse v. Boyd, No.Civ.A.07-5502, 2009 WL 1874175, at *1 (D.N.J. June 30, 2009)(Greenaway, J.).  Indeed, "'entry of default judgment is a two-part process; default judgment may be entered only upon the entry of default by the Clerk of the Court.'"  Id. (quoting Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, 175 F. App'x 519, 521 n.1 (3d Cir. 2006)); see also Limehouse v. Delaware, 144 F. App'x 921, 923 (3d Cir. 2005)("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").  Given that Plaintiffs have not received an entry of default by the Clerk of Court against the Individual Defendants prior to filing their Motion for Default Judgment, the Court must deny such a request.  Accordingly, Plaintiffs' Motion for Default Judgment against all Defendants will be denied.

**B.   Rule 11 Sanctions**

In their Response in Opposition to the Pennsauken School Defendants' Motion to Vacate Clerk's Entry of Default, Plaintiffs included a section in which they allege that Defendants should be sanctioned under Rule 11 of the Federal Civil Rules for making misrepresentations to Plaintiffs and the Court regarding the service and acceptance of process and that Defendants' proffered reasoning for their tardy response is negligent and in violation of the requirements detailed in subsection (b) of Rule 11.

"Rule 11 sanctions are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." Goldenberg v. Indel, Inc., No.Civ.A.09-5203, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011)(Simandle, J.)(citing Watson v. City of Salem, 934 F. Supp. 643, 662 (D.N.J. 1995); Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)). Indeed, the Third Circuit has recognized that sanctions should only be imposed in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[] of the legal system." Id. In addition to the fact that Rule 11 sanctions are to be imposed sparingly and only under the most exceptional circumstances, any Rule 11 motion alleging that a party has violated subsection (b) of the rule must also be filed as a separate pleading. See Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").

Here, Plaintiffs have not filed a separate motion for Rule 11 sanctions, but rather have subsumed their sanctions request within their Response in Opposition to Defendants' Motion to Vacate Clerk's Entry of Default. As such, they themselves have failed to abide by the procedures set forth in the Federal Civil Rules. Moreover, as discussed above with respect to the Pennsauken School Defendants' Motion to Vacate Clerk's Entry of Default, the Court does not find that Defendants' proffered reasoning for its failure to timely respond to Plaintiffs' Complaint amounts to an exceptional circumstance that abused the legal system and is worthy of Rule 11 sanctions.

Accordingly, Plaintiffs' request for Rule 11 sanctions to be entered against all Defendants will likewise be denied.

**IV.  CONCLUSION**

For the reasons expressed above, the Court finds that the Pennsauken School Defendants have shown good cause as to why the Clerk's entry of default entered on January 22, 2013 should be set aside.  Thus, the Pennsauken School Defendants' Motion to Vacate Clerk's Entry of Default shall be granted.  Moreover, Defendants also requested additional time to respond to Plaintiffs' Complaint in their Motion to Vacate Entry of Default.  Defendants will have twenty-one days from the date of the entry of this Memorandum Opinion and accompanying Order to file their responsive papers.  Furthermore, given that the Court vacates the Clerk's entry of default as to the Pennsauken School Defendants and that Plaintiffs have not obtained a Clerk's entry of default pursuant to Rule 55(a) as to the Individual Defendants, Plaintiffs' Motion for Default Judgment as to all Defendants will be denied.  Finally, to the extent Plaintiffs sought Rule 11 sanctions against Defendants in their Response in Opposition to Defendants' Motion to Vacate Entry of Default, such a request will likewise be denied.

An accompanying Order follows.

*/s/ Noel L. Hillman*
_____
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

Dated:  August 9, 2013